P|F|S|

PATZIK, FRANK & SAMOTNY LTD.
ATTORNEYS AT LAW

**Jonathan S. Goodman**
**312.551.3060**
**jgoodman@pfs-law.com**

March 9, 2023

**Via Registered Mail and Email, as indicated**

Banyan Cay Resort Fund, LLC
c/o Banyan Cay Resort Fund Management, LLC
230 Park Ave., Ste. 1549
New York, NY 10169
Attention: David Finkelstein
*Via Registered Mail*

Banyan Cay Resort Fund, LLC
c/o Banyan Cay Resort Fund Management, LLC
230 Park Ave., Ste. 1549
New York, NY 10169
Attention: Jacqueline Finkelstein-LeBow
*Via Registered Mail*

Richard Zaretzky
Registered Agent, Banyan Cay Resort Fund, LLC
1615 Forum Place, Ste. 3A
West Palm Beach, Florida 33404
*Via Registered Mail*

David Finkelstein
Banyan Cay Resort Fund Management, LLC
1298 Park St.
Atlantic Beach, NY 11509
dfinkelstein@eb5aig.com
*Via Registered Mail and Email*

**Re: Demand for Inspection of Books and Records of Banyan Cay Resort Fund, LLC Pursuant to Fla. Stat. §605.0410**

Dear Mr. Finkelstein, Ms. Finkelstein-LeBow, and Mr. Zaretzky:

This firm represents Charlotte McCullagh (**"McCullagh"**), including regarding her membership interest in Banyan Cay Resort Fund, LLC (the **"Company"**). Any capitalized terms not otherwise defined herein shall have the meaning assigned to them in the Confidential Private Offering Subscription Documents offered by the Company dated December 16, 2016, as revised from time to time, including all exhibits thereto, and executed by McCullagh on September 24, 2018 (together, the **"Subscription Documents"**).

As you are aware, on September 7, 2022, U.S. Citizenship and Immigration Services (**"USCIS"**) denied McCullagh's Immigrant Petition by Alien Investor ("**Form I-526"**), filed pursuant to Section 203(b)(5) of the Immigrant and Nationality Act on December 6, 2018. While we believe that the Company is already in possession of this decision (the **"Denial"**), a copy is enclosed herein. The Denial raised a number of concerns, including without limitation whether McCullagh's Subscription Amount was made available to the business(es) most closely responsible for creating the employment upon which the petition is based, and whether McCullagh's Subscription Amount was released from the Escrow Account in compliance with the terms of the Subscription Documents, including the Subscription and Administrative Fee Escrow Agreement.

McCullagh waived her right to appeal the Denial. Accordingly, pursuant to Section XIII of the Confidential Offering Memorandum incorporated in the Subscription Documents, McCullagh is entitled to the return of the Subscription Amount and the Administrative Fee. Despite the fact that McCullagh has been entitled to the return of the Subscription Amount and the Administrative Fee since the Denial was issued on September 7, 2022 and despite her request for such return, the Company, through its Managing Member and David Finkelstein, and Jacqueline Finkelstein-LeBow, as the individuals who control the Managing Member, have willfully and unreasonably refused to return these amounts to McCullagh, in breach of the Subscription Document.

<u>List of Books and Records Demanded of Banyan Cay Resort Fund, LLC</u>[1]

As a member of the Company, McCullagh is entitled to information from the Company, to understand how her Subscription Amount was applied and whether these proceeds were released from the Escrow Account in compliance with the terms of the Subscription Document, as well as to understand McCullagh's rights as they pertain to the return of her Subscription Amount and the Administrative Fee owed to her, to determine the Company's compliance with the terms of the Subscription Documents, and to determine whether the Company has treated all Series A Members consistently, including with regard to the return of any Series A Member's Subscription Amount and/or Administrative Fee. In addition, this information is necessary to investigate potential mismanagement by the Managing Member of the Company. Accordingly, pursuant Fla. Stat. §605.0410 *et seq.*, demand is hereby made upon the Company to make the following documents available for inspection within ten (10) calendar days of receipt of this letter:

(1) Account statements for the Reserve Account from January 1, 2018 to the present;

(2) All written and electronic documents, communications, and other records relating to the Reserve Account;

[1] Unless stated otherwise, the time period of September 24, 2018 to the present is the applicable time period applied to each record requested.

(3) Account statements for the Escrow Account from January 1, 2018 through the present;

(4) All written and electronic documents, communications, and other records relating to the Escrow Account;

(5) All written and electronic documents and communications between the Company and the Escrow Agent relating to the Escrow Account;

(6) Account statements for any account in which the proceeds, or any portion of the Loan proceeds, are held or have been held, from January 1, 2018 through the present;

(7) All written and electronic documents, communications, and other records relating to the Loan, including payment of the Loan to Banyan Cay Mezzanine Borrower, LLC;

(8) All written and electronic documents, communications, and other records relating to the Early Release Guaranty;

(9) All written and electronic documents and communications between the Company and USCIS relating to McCullagh's Form I-526;

(10) All written and electronic documents and communications between the Company and USCIS relating to the Denial;

(11) All written and electronic documents, communications, and other records relating to the Denial;

(12) All written and electronic documents and communications between the Company and any Series A Member relating to any demand by a Series A Member for return of a Subscription Amount and/or Administrative Fee;

(13) All written and electronic documents, communications, and other records relating to the return of a Subscription Amount and/or Administrative Fee to any Series A Member;

(14) Financial records for the Company beginning with the Company's fiscal year 2018 through the date of this letter, including:

(15)

a. Quarterly and Annual unaudited and audited financial statements;
b. Cash flow statements;
c. Value of equity in the Company; and

d. Current indebtedness of the Company;

(16) All listing or brokerage agreements with any broker for the sale of the Project or any portion of the Project;

(17) All engagement letters or similar contracts with any investment bankers, accountants, attorneys or similar professionals in connection with, for, or pertaining to the sale of the Project;

(18) All letters of intent, term sheets, memoranda of understanding, confidential information memoranda, or other documents or communications (whether in hard copy or electronic form) relating to any potential acquisition/sale of all or some of the Project;

(19) All contracts for the sale of the Project;

(20) Documents and communications referring or relating to or otherwise evidencing the current status of discussions regarding sale of the Project and all investment banker, pitch, sale, or similar materials prepared in connection with any potential sale of the Project, including any such materials that include a potential estimate sale value of the Project;

(21) All offers, solicited or unsolicited, to purchase the Project or any portion of the Project;

(22) All appraisals or valuations of the Project, or any portion of the Project.

We request that the Company either send copies of the requested information to our office or make the documents available for inspection at another mutually convenient location.

Your anticipated cooperation is appreciated. We look forward to hearing from you to schedule the logistics for the inspection.

Sincerely,

**PATZIK, FRANK & SAMOTNY LTD.**

/s/Jonathan S. Goodman
Jonathan S. Goodman

Encl.

cc: John W. Morse (via email)
Elizabeth L. Archerd (via email)

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
*Immigrant Investor Program*
131 M Street, NE, MS 2235
Washington, DC 20529

U.S. Citizenship and Immigration Services

**TO:**

Charlotte A. McCullagh
36 Gramercy Park East
Apt. 7E
New York, NY 10003

**DATE: September 7, 2022**

**Application: Form I-526**
**A-Number:**
**File: WAC1990079150**

**DECISION**

Your Form I-526, Immigrant Petition by Alien Entrepreneur, filed by Charlotte A. McCullagh, has been denied for the following reason(s):

**See Attachment**

If you desire to appeal this decision, or file a motion to reopen and/or reconsider, you may do so. Your notice of appeal or motion must be filed on Form I-290B, Notice of Appeal or Motion, within 33 calendar days of the date of this notice with the appropriate filing fee payable to U.S. Department of Homeland Security, with a check or money order from a bank or other institution located in the United States. If no appeal or motion is filed within the time allowed, this decision will be the final decision in this matter. **The appeal or motion may not be filed directly with the AAO.** Initial filing of the Form I-290B should be sent to:

| | | |
|---|---|---|
| USCIS<br>P.O. Box 660168<br>Dallas, TX 75266 | OR | USCIS Attn: I-290B<br>2501 S. State Highway 121, Business Suite 400<br>Lewisville, TX 75067 |
| (For Postal Service Delivery) | | (For Express Mail/Courier) |

In support of your appeal, you may submit a brief and/or additional evidence, either with the initial filing or within 30 calendar days of the initial filing. If necessary, you may request additional time to submit a brief. Such request must also be made within 30 calendar days of filing. Note, however, that an extension of time to file the appeal may not be granted. Any brief, written statement, or other evidence not filed with Form I-290B, or any request for additional time for the submission of a brief or other material must be sent directly to the AAO at the following address:

U.S. Citizenship and Immigration Services
Administrative Appeals Office
5900 Capital Gateway Drive, MS 2090
Camp Springs, MD 20588-0009

However, if you are filing a motion, any supplementary arguments or evidence **must be filed with the motion to reopen and/or reconsider**. No additional time will be permitted.

The Small Business Regulatory Enforcement and Fairness Act established the Office of the National Ombudsman (ONO) at the Small Business Administration. The ONO assists small businesses with issues related to federal regulations. If you are a small business with a comment or complaint about regulatory enforcement, you may contact the ONO at www.ombudsman.sba.gov or phone 202-205-2417 or fax 202-481-5719.

Sincerely,

Alissa L. Emmel
Chief Immigrant Investor Program

cc: Ian E. Scott, Esq.
2 Park Ave
20th Floor
New York, NY 10016

**NOTICE OF DECISION**

**Form I-526, Immigrant Petition by Alien Entrepreneur**
**Banyan Cay Resort Fund, LLC**

## I. Procedural History and Commercial Enterprise Background

Ms. Charlotte A. McCullagh (Petitioner) filed an Immigrant Petition by Alien Investor(Form I-526), pursuant to section 203(b)(5) of the Immigration and Nationality Act (INA) on December 6, 2018.

Petitioner asserts eligibility based on an investment in Florida EB-5 Investments, LLC (Regional Center) pursuant to the Immigrant Investor Program.[1] The Form I-526 and the evidence presented assert that Petitioner invested $500,000 into Banyan Cay Resort Fund, LLC, the new commercial enterprise (NCE), on September 26, 2018. The NCE originally proposed to pool $60 million from 120 immigrant investors, but now is seeking a minimum of $17.2 million from an undetermined number of EB-5 investors.[2] According to the Form I-526 and supporting evidence, the NCE will lend the entire amount to two job creating entities (JCEs): 1) Banyan Cay Dev, LLC (now BC Dev, LLC); and 2) Banyan Cay Resort & Golf, LLC (now BCR Golf, LLC).[3] The JCEs intend to use the EB-5 funds to develop a project comprising total of 198 acres community; including a 5 acre condo pad, 31 acres to build 51 single family homes and 24 golf villas, 162 acres to build a 150 key hotel, golf course, new club house, and a tennis center, and is located at 2300 Presidential Way, West Palm Beach, Florida 33401 (Palm Beach County). Petitioner asserts that the JCE is principally doing business within a targeted employment area (TEA).

Based upon a review of the initial record, Petitioner did not establish eligibility for the benefit sought. Accordingly, U.S. Citizenship and Immigration Services (USCIS) issued a Request for Evidence (RFE) on June 14, 2021. In the RFE, USCIS notified Petitioner that the following eligibility requirements needed further clarification or additional evidence:

- Petitioner has Invested or is Actively in the Process of Investing the Required Amount of Capital;
- Petitioner has Placed the Required Amount of Capital At Risk;
- Compliance with 8 C.F.R. § 204.6(g)1/non-EB-5 investment equity in the NCE; and

[1] Section 610 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, 106 Stat. 1828 (1992), as amended (hereinafter the "Appropriations Act").

[2] USCIS notes that if the NCE raises the maximum amount of EB-5 funds from 71 EB-5 investors, the amount of EB-5 funds raised above $17.4 million in EB-5 funds ($54 million from 60 EB-5 investors) will be used to reduce the amount of the senior loan. See Business Plan, updated, dated October 1, 2020, p. 7, 46, 49 and 57.

[3] Petitioner contends that as a result of restructuring, the NCE will no longer loan the EB-5 funds to two JCEs (Banyan Cay Dev, LLC and Banyan Cay Resort & Golf, LLC) but instead will loan the EB-5 funds to Banyan Cay Mezzanine Borrower, LLC, who will make the EB-5 funds available to fund approved project costs through capital contributions to wholly owned subsidiaries that, in turn, own individual project components.

- Comprehensive Business Plan.

On November 8, 2021, Petitioner responded to the RFE with the submission of additional evidence. Following a review of the RFE Response, Petitioner did not establish eligibility for the benefit sought. Therefore, USCIS issued a Notice of Intent to Deny (NOID) on May 19, 2022. In the NOID, USCIS notified Petitioner that the following eligibility requirements needed further clarification or additional evidence:

- Comprehensive Business Plan (with multiple issues, including construction liens).

On July 25, 2022, Petitioner responded to the NOID with the submission of additional evidence. However, based on a review of the entire record of proceeding, USCIS concludes that Petitioner has not established eligibility for the benefit sought. Therefore, the petition is denied for the reasons discussed below.

## II. Deference

Volume 6, Part G, Chapter 6 of the USCIS Policy Manual articulates USCIS's policy regarding deference to previous agency determinations by stating, "as a general matter, USCIS does not reexamine determinations made earlier in the EB-5 process, and such earlier determinations will be presumed to have been properly decided." The Policy Manual also states, "USCIS does not defer to a previously favorable decision in later proceedings when, for example, the underlying facts upon which a favorable decision was made have materially changed, there is evidence of fraud or misrepresentation in the record of proceeding, or the previously favorable decision is determined to be legally deficient."[4]

USCIS previously approved a previously filed I-526 petition associated with this NCE/Project. However, USCIS cannot grant deference to due to material change. For the reasons discussed in the relevant sections below, USCIS will not be deferring to the prior approval, and will instead be conducting a de novo review of the affected eligibility requirement(s). Further, as stated in the Policy Manual, "USCIS will still conduct a de novo review of each prospective immigrant investor's lawful source of funds and other individualized eligibility criteria." The analysis below addresses issues not granted deference.

## III. Analysis of the Evidence

"A petitioner must establish eligibility at the time of filing; a petition cannot be approved at a future date after the petitioner becomes eligible under a new set of facts. *See Matter of Katigbak*, 14 I&N Dec. 45, 49 (Comm. 1971). Therefore, a petitioner may not make material changes to a petition that has already been filed in an effort to make an apparently deficient petition conform to Service requirements." *Matter of Izummi*, 22 I&N Dec. at 175; *see also* 8 C.F.R. § 103.2(b)(1).

[4] USCIS Policy Manual, Volume 6, Part G, Chapter 6.

### A. Capital At Risk

Applicable regulations provide that, in order "[t]o show that the petitioner has invested or is actively in the process of investing the required amount of capital, the petition must be accompanied by evidence that the petitioner has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. Evidence of mere intent to invest, or of prospective investment arrangements entailing no present commitment, will not suffice to show that the petitioner is actively in the process of investing. The alien must show actual commitment of the required amount of capital." 8 C.F.R. § 204.6(j)(2). For the capital to be "at risk" there must be a risk of loss and a chance for gain.

In order to demonstrate that Petitioner has placed such capital at risk for the purpose of generating a return, Petitioner must first present evidence that he or she has made a qualifying investment of the minimum required amount of capital. The regulations define "invest" to mean a contribution of capital. However, the regulations state that a contribution of capital in exchange for a note, bond, convertible debt, obligation, or any other debt arrangement between the alien entrepreneur and the new commercial enterprise does not constitute a contribution of capital and, thus, does not constitute a qualifying investment. 8 C.F.R. § 204.6(e).

#### *1. Capital Made Available to the Business(es) Most Closely Responsible for Job Creation*

*Matter of Izummi* held that, in order for a petitioner to meet the burden of establishing that the investment capital has been placed at risk for the purpose of generating a return, the "full amount of money must be made available to the business(es) most closely responsible for creating the employment upon which the petition is based." 22 I&N Dec. at 179 (emphasis omitted).

The evidence in the record fails to establish that the required minimum amount of capital has been made available to the business(es) most closely responsible for job creation. The record contains the following evidence:

- Exhibits 30-32 of the RFE response, dated November 3, 2021 (Exhibit 30, $5 million in escrow funds released, Exhibits 31-32, NCE's bank statements for two different accounts);
- Subscription and Administrative Fee Escrow Agreement, effective date, February 27, 2017;
- Amendment No. 1 to Subscription and Administrative Fee Escrow Agreement, effective date, September 25, 2018;
- Amendment No. 2 to Subscription and Administrative Fee Escrow Agreement, effective date, October 14, 2020;
- EB-5 loan agreement, dated October 15, 2020;
- Confidential Private Offering Memorandum, dated December 16, 2016, revised February 28, 2017;
- Confidential Private Offering Memorandum, Supplement #1, dated September 27, 2018; and
- Confidential Private Offering Memorandum, Supplement #2, dated October 2, 2020.

In the NOID, USCIS indicated that based on the evidence in the record, $5 million in EB-5 funds were released from escrow and was used to pay off lienors. However, Subscription and Administrative Fee Escrow Agreement, effective date, February 27, 2017, stated that the EB-5 funds will not be disbursed until the following conditions are met:

> (i) at least ten (10) Subscribers have (A) deposited their respective Subscription Proceeds into the Escrow Account, and (B) filed their I-526 Petitions with USCIS, (ii) the Escrow Agent is advised in writing by Issuer and and Subscriber Representative that Banyan Cay Dev, LLC and Banyan Cay Resort & Golf, LLC (collectively, the "Developer") have received aggregate equity contributions of at least Twenty Million Dollars ($20,000,000.00), (iii) the Escrow Agent is advised in writing by Issuer and Subscriber Representative that definitive loan documentation to evidence the loan to be extended by the Issuer to the Developer has been finalized and executed, (iv) the Escrow Agent is advised in writing by Issuer and Subscriber Representative that definitive documentation providing for a senior secured construction loan in the amount of at least Twenty Five Million Dollars ($25,000,000.00) has been finalized and executed by the Developer and the lender under such documentation, and (v) the Reserve Account (as defined below) has been established and funded in accordance with Section 4(e).

Based on these escrow release conditions, it was not clear to USCIS how the $5 million in escrow funds was lawfully released to the NCE's bank account and then were loaned to Banyan Cay Mezzanine Borrower, LLC versus Banyan Cay Dev, LLC and Banyan Cay Resort & Golf, LLC, the original entities listed in the Subscription and Administrative Fee Escrow Agreement, effective date, February 27, 2017.

In response to the NOID, petitioner through counsel[5] asserts the following:

> Petitioner's EB-5 investment funds were transferred out of the NCE's escrow account at Signature Bank, account #1502802913, on October 15, 2020 as part of a $5,000,000 tranche to the NCE's operating account at Signature Bank, account # 1503020366. On the same day, the NCE lent $5,000,000 to the EB-5 Project when it transferred the funds to Cherry Edgar Smith PA Iota Trust as part of the Senior Loan modification in October 2020 to payoff lienors on the EB-5 Project. The escrow agreement, as effective when Petitioner's funds were released from escrow on October 15, 2020, allows for an "Initial Release" of capital "after the 1-526 Petitioner for a Subscriber has been filed with the USCIS and Form I-797 has been received."

In addition, Petitioner supplied an amended escrow agreement, dated October 15, 2020[6], corroborating the assertions made by counsel that Petitioner funds were available for release. However, USCIS considers this a material change because Petitioner is now asserting eligibility under a materially new set of facts that did not exist at the time of filing for this petition.

[5] Attorney Cover Letter for the NOID response, dated July 15, 2022.
[6] Amendment No. 2 to Subscription and Administrative Fee Escrow Agreement, effective date, October 14, 2020.

Specifically, as previously mentioned, the Subscription and Administrative Fee Escrow Agreement, effective date, February 27, 2017, had specific release conditions which included making EB-5 funds available to Banyan Cay Dev, LLC and Banyan Cay Resort & Golf, LLC, the initial job creating entities. Now, the evidence in the record indicates that the plan is for the NCE to loan EB-5 funds to Banyan Cay Mezzanine Borrower, LLC, which would then make these EB-5 funds available to "fund approved Project costs, through capital contributions to wholly owned subsidiaries that, in turn, own individual Project components."[7] However, it appears based on the information Petitioner provided through counsel[8] that on October 15, 2020, the EB-5 funds were not loaned to Banyan Cay Mezzanine Borrower, LLC (the newly identified entity purportedly affiliated with the job creating entities[9]). Instead, the EB-5 funds were purportedly loaned to the EB-5 project when they were sent to Cherry Edgar Smith PA Iota Trust as asserted by counsel for Petitioner.

USCIS notes, there is no evidence that paying the Cherry Edgar Smith PA Iota Trust $5 million in EB-5 funds is equivalent to a loan to Banyan Cay Mezzanine Borrower, LLC. A review of the EB-5 loan agreement, dated October 15, 2020, does not describe or indicate a payment of the EB-5 funds to Cherry Edgar Smith PA Iota Trust to pay off the construction liens or that payment of the construction liens was from EB-5 funds lent to Banyan Cay Mezzanine Borrower, LLC. See EB-5 loan agreement, dated October 15, 2020. In addition, Petitioner asserts through counsel, that paying off the construction liens on October 15, 2020, was part of the senior loan modification[10]; however, there is no documentary evidence in the EB-5 loan agreement, dated October 15, 2020, concerning paying off the construction liens with EB-5 funds. Additionally, the record does not have any documentary evidence that the constructions liens were part of the "approved project costs" as described in the Confidential Private Offering Memorandum, Supplement #2, dated October 2, 2020, p. 2.

Based on issues described above, it appears that the amended changes to the escrow agreement occurred in order to make EB-5 funds available to facilitate financial transactions unrelated to the intended purposes of EB-5 investment capital as supported by the facts presented at the time of filing for this petition. Therefore, Petitioner has failed to demonstrate by preponderance of the evidence that her investment funds were "made available to the business(es) most closely responsible for creating the employment upon which the petition is based." *Matter of Izummi*, 22 I&N Dec. at 179.

"A petitioner must establish eligibility at the time of filing; a petition cannot be approved at a future date after the petitioner becomes eligible under a new set of facts. *See Matter of Katigbak*, 14 I&N Dec. 45, 49 (Comm. 1971). Therefore, a petitioner may not make material changes to a petition that has already been filed in an effort to make an apparently deficient petition conform to Service requirements." *Matter of Izummi*, 22 I&N Dec. at 175; *see also* 8 C.F.R. § 103.2(b)(1).

---

[7] See Confidential Private Offering Memorandum, Supplement #2, dated October 2, 2020, p. 2.
[8] Attorney Cover Letter for the NOID response, dated July 15, 2022.
[9] Job creating entities: 1) Banyan Cay Dev, LLC (now BC Dev, LLC); and 2) Banyan Cay Resort & Golf, LLC (now BCR Golf, LLC)
[10] Attorney Cover Letter for the NOID response, dated July 15, 2022.

## IV. **Conclusion**

In summary, USCIS has determined, based on the initial evidence submitted upon filing and after consideration of all additional evidence submitted, that Petitioner has failed to establish by a preponderance of the evidence that the Form I-526 complies with applicable legal requirements. Consequently, USCIS concludes that Petitioner is ineligible for classification under INA § 203(b)(5)(A).

In visa petition proceedings, Petitioner bears the burden of establishing eligibility for the benefit sought. *See Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966). As Petitioner has not satisfied her burden of establishing eligibility, the Form I-526 is denied.

If Petitioner disagrees with this decision, or if Petitioner has additional evidence that shows this decision is incorrect, Petitioner may file a motion or an appeal to this decision by filing a completed Form I-290B, Notice of Appeal or Motion, along with the appropriate filing fee. A copy is enclosed. Petitioner may also include a brief or other written statement and additional evidence in support of the motion or appeal. The Form I-290B must be filed within 33 days from the date of this notice. If a motion or appeal is not filed within 33 days, this decision is final.

Petitioner must send the completed Form I-290B and supporting documentation with the appropriate filing fee to:

USCIS I-290B
P.O. Box 660168
Dallas, TX 75266

For an appeal, Petitioner may request additional time to submit a brief within 30 calendar days of filing the appeal. Any brief, written statement, or evidence in support of an appeal that is not filed with Form I-290B must be directly sent within 30 days of filing the appeal to:

U.S. Citizenship and Immigration Services
Administrative Appeals Office
5900 Capital Gateway Drive, MS 2090
Camp Springs, MD 20588-0009

For more information about the filing requirements for appeals and motions, please see 8 C.F.R. § 103.3 or 103.5, or visit the USCIS website at www.uscis.gov.